IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN R. LUMPKIN, | ) | CASE NO.:  1:15-CR-317 |
| | ) | 1:17-CV-1522 |
| Defendant-Petitioner, | ) | |
| | ) | CHIEF JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO PETITIONER'S |
| Plaintiff-Respondent. | ) | MOTION PURSUANT TO 28 U.S.C. |
| | ) | § 2255 |

The United States of America through its counsel David A. Sierleja, Acting United States Attorney, and Edward F. Feran, Assistant United States Attorney, opposes Kevin R. Lumpkin's motion pursuant to Title 28, United States Code, Section 2255, and respectfully urges this court to deny the motion without a hearing because he fails to establish a single ground for relief.

I.  BACKGROUND

  A.  **Procedural History**

On August 26, 2015, a federal grand jury in the Northern District of Ohio returned an indictment charging Kevin R. Lumpkin with two counts of knowingly selling firearms to persons he knew or had reasonable cause to believe had been convicted of a crime punishable by

imprisonment for a term exceeding one year, in violation of Title 18, United States Code, Section 922(d)(1).  (R. 7: Indictment, PageID 22-23).  Count 1 was based on Lumpkin's sale of a Hi-Point .45 caliber rifle to Calvin Kelly and Count 2 was based on Lumpkin's sale of a Ruger .380 caliber pistol to Michelle Devine.  (Id.).

On December 4, 2015, a jury found Lumpkin guilty of both counts.  (R. 27: Verdict Forms, PageID 131-32).  On February 29, 2016, the Court grouped Counts 1 and 2 for the purpose of sentencing and concluded that the advisory Guidelines range for Lumpkin's case was 63 to 78 months of imprisonment.  (R. 41: Sentencing Trans., PageID 234-35).  The Court sentenced Lumpkin to 63 months of imprisonment on each count, to be served concurrently.  (Id., PageID 250).

The Court entered final judgment on February 29, 2016, and Lumpkin timely filed a notice of appeal.  (R. 34: Judgment, PageID 200; R. 35: Notice of Appeal, PageID 206).  On January 27, 2017, the Court of Appeals for the Sixth Circuit affirmed Lumpkin's conviction.  United States v. Lumpkin, 677 F. App'x. 992 (6th Cir. 2017).  Lumpkin did not file a petition for a writ of certiorari.  He timely filed the instant motion on July 19, 2017.  (R. 51: Motion, PageID 813).

      B.      **Factual Statement**

Over approximately two years, Lumpkin sold firearms and related items to Calvin Kelly and Michelle Devine, knowing or having reasonable cause to believe that they were convicted felons.  During most of that time, Kelly and Devine lived together in Cleveland, Ohio.  (R. 44: Trial Trans., PageID 320-22).

Kelly's and Devine's trial testimony established that Lumpkin regularly visited their home to purchase and smoke marijuana.  (Id., PageID 323-24; R. 45: Trial Trans., PageID 494-

2

95). Lumpkin's interactions with the couple established that he had reasonable cause to believe that each was a convicted felon and that their lifestyle had made them targets of a home invasion and burglaries. (R. 44: Trial Trans., PageID 325, 339, 351-54, 406-07; R. 45: Trial Trans., PageID 510-13).

Although Lumpkin knew about Kelly's and Devine's circumstances, he sold them firearms and related items, including, but not limited to: the Hi-Point rifle charged in Count 1 (R. 45: Trial Trans., PageID 501-02)[1]; a Bushmaster rifle (Id., PageID 503-04); a sawed-off shotgun (Id., PageID 497); a bullet proof vest (Id., PageID 509); and the Ruger pistol charged in Count 2 (R. 44: Trial Trans., PageID 352-53). Physical and documentary evidence such as item packaging and purchase records supported Kelly's and Devine's testimony. (R. 45: Trial Trans., PageID 440-43, 577, 580-81, 593-95, 598, 605-06).

An FBI agent testified about interviewing Lumpkin on July 28, 2015, approximately a month before the grand jury indictment. (Id., PageID 620). The FBI covertly recorded the interview, which occurred in the backyard of Lumpkin's home. (Id., PageID 621-24). The jury listened to Lumpkin's interview during which he acknowledged that Devine had spent time in jail and that a shooting at Kelly's home in 2011 probably had been the result of a drug deal. (Id., PageID 681-82).

The jury found Lumpkin guilty of both counts. On direct appeal, Lumpkin claimed that the government's evidence failed to prove that he knew or had reasonable cause to believe that Kelly and Devine were convicted felons. The Sixth Circuit disagreed stating that, "[d]espite the fact that no trial witness stated Lumpkin knew that Kelly and Devine were felons, there was

---

[1] Often referred to in the record as government's exhibit 1-A.

ample circumstantial evidence from which the jury could reasonably infer that fact." Lumpkin, 677 F. App'x. at 994.

## II. LAW

"A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Weinberger v. United States, 268 F.3d 346, 351 (6th Cir. 2001). A petitioner has the burden of sustaining his contentions by a preponderance of the evidence. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006) (citation and quotation marks omitted). The court may deny a § 2255 motion without a hearing "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)).

It is well settled that "[t]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). A petitioner may not raise claims that should have been raised on direct appeal unless there is a showing of either: 1) good cause for failing to raise the claim earlier and actual prejudice, or 2) actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). Petitioners also may not re-litigate issues raised on appeal "absent highly exceptional circumstances," such as an intervening change in the law. DuPont v. United States, 76 F.3d 108, 110 (6th Cir. 1996) (citations omitted).

## III. ARGUMENT

Lumpkin raises several claims, none of which establishes a ground for relief.

4

A.     **Restoration of Rights**

Lumpkin states that, "Ms. Devine's rights were restored under the [Ohio Revised Code], [which] means that his conviction [on Count 2] under § 922(d)(1) is no longer enforceable." (R. 51-1: Motion, PageID 819).  He raises the same claim to attack his conviction on Count 1, stating that, "he did not directly sell any firearms to Mr. Kelly, only to Ms. Devine." (Id., PageID 822).

1.     **Sale of Hi-Point to Calvin Kelly (Count 1)**

With respect to Lumpkin's claim that he did not sell the Hi-Point to Kelly, he is procedurally barred from raising the claim because he did not raise it at trial or on direct appeal. Furthermore, Lumpkin cannot overcome the cause and actual prejudice standard to have his barred claim reviewed on the merits.  For the purposes of the cause and actual prejudice standard, "cause . . . ordinarily requires a showing of some external impediment preventing [petitioner] from constructing or raising a claim." Murray v. Carrier, 477 U.S. 478, 492 (1986).

Lumpkin cannot establish cause because nothing prevented him from challenging the evidence that he sold the Hi-Point directly to Kelly.  Raising for the first time in his motion that he sold the Hi-Point to Devine, whose civil rights he claims were restored, is insufficient because Devine's status was not pertinent to Count 1.  At trial Lumpkin could have challenged the evidence that he sold the Hi-Point directly to Kelly by cross-examining Kelly and Devine about the particulars of that purchase or by challenging the government's evidence in his motion for acquittal, but he did neither. (R. 45: Trial Trans., PageID 678-79).

Indeed, the record contradicts Lumpkin's claim that he did not sell firearms to Kelly. Kelly testified that after "[Devine's] truck was shot up one night" he asked Lumpkin for "something like an assault rifle, you know, handguns or assault rifles or whatever." (Id., PageID 499-500).  Weeks later, Lumpkin sold Kelly two assault rifles, one being the Hi-Point charged in

Count 1.  (Id., PageID 500-02; see also R. 44: Trial Trans., PageID 342-45).  Kelly further testified that other conversations he had had with Lumpkin resulted in Lumpkin selling him a sawed-off shotgun, (R. 45: Trial Trans., PageID 496-97), and a bullet-proof vest.  (Id., PageID 509-10).

For the foregoing reasons, Lumpkin's claim that he did not sell the Hi-Point to Kelly is not only procedurally barred, but also meritless.

### 2. Sale of Ruger to Michelle Devine (Count 2)

With respect to Lumpkin's claim that Devine was not prohibited from possessing firearms, he does not offer evidence that Devine had the right to own a firearm between February 12, 2012 and August 11, 2013, the period charged in Count 2 of the indictment.  If "claims are stated in the form of conclusions without any allegations of facts in support thereof [and] unsupported by proof or reference to such proof," then a § 2255 motion is "legally insufficient." Short v. United States, 504 F.2d 63, 65 (6th Cir. 1974).

Furthermore, Lumpkin did not raise the issue of Devine's status at trial or on direct appeal.  In fact, Lumpkin conceded that Kelly and Devine were felons, but challenged the fact that he knew or had reasonable cause to know that they were felons.  (R. 45: Trial Trans., PageID 678).  Nonetheless, Lumpkin could have sought information about whether Devine's rights were restored; therefore, he fails to show cause for his procedural default.  As explained below, he also fails to show that he was actually prejudiced by this perceived error.

Title 18, United States Code, Section 922(d)(1), makes it unlawful for any person to sell a firearm to any person knowing or having reasonable cause to believe that such person is under indictment for, or has been convicted of a crime punishable by imprisonment for a term exceeding one year.  Title 18, United States Code, Section 921(a)(20) defines what constitutes a

6

crime punishable by imprisonment for a term exceeding one year and specifically *excludes* "[a]ny conviction . . . for which a person . . . has had civil rights restored . . . *unless* such . . . restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." (emphasis added).  Although state law determines the restoration of civil rights, federal law governs the interpretation of the "unless" clause in § 921(a)(20) because "the Federal Government has an interest in a single, national, protective policy, broader than required by state law."  Caron v. United States, 524 U.S. 308, 316 (1998).

Ohio Revised Code ("O.R.C.") §§ 2923.13, 2961.01, and 2967.16 govern the rights of felons.  The government agrees with Lumpkin that O.R.C. § 2923.13 does not apply to Devine because her conviction for aggravated theft (O.R.C. § 2913.02) is not a felony offense of violence or a drug offense.  See O.R.C. § 2901.01(A)(9).  Pursuant to O.R.C. § 2961.01, Devine's right to vote would have been restored automatically upon being released from incarceration.  Lastly, and of particular importance in the instant matter, pursuant to O.R.C. § 2967.16, the remainder of Devine's rights, including the right to seek and hold public office and right to serve on a jury, would have been restored only upon final discharge of her sentence.

Therefore, under the federal government's broad interpretation of restoration of rights, Devine was prohibited from possessing firearms under federal law until final discharge of her sentence.  United States v. Cassidy, 899 F.2d 543 (6th Cir. 1990); United States v. Zellars, 334 Fed. App'x. 742 (6th Cir. 2009).  Even if Devine's rights had been restored by operation of O.R.C. § 2967.16 prior to the period charged in the indictment, Lumpkin cannot show that he was actually prejudiced because he is serving statutorily authorized 63-month concurrent sentence on each of Counts 1 and 2.  See 18 U.S.C. § 924(a)(2).  This fact is also fatal to

7

Lumpkin's claim of actual innocence of Count 2 because ultimately he is unable to demonstrate that he is serving an illegal sentence.  See 28 U.S.C. § 2255(a).

For the foregoing reasons, Lumpkin's claim that Devine was not prohibited from possessing firearms is not only legally insufficient, but also procedurally barred.  Even if this Court disagrees on these points, Lumpkin cannot establish that he would suffer prejudice if his claim is not reviewed because he is serving a statutorily authorized 63-month concurrent sentence on each of Counts 1 and 2.

### B. Recorded Interview

Lumpkin states that, "the Agents deprived him of the ability to voluntarily invoke his privileges against self-incrimination when they failed to inform him of his rights and that the interview was being recorded." (R. 51-1: Motion, PageID 823-24).  Lumpkin failed to raise these claims in district court or on direct appeal; therefore, they are procedurally barred.  Moreover, these claims are meritless because the agents did not have to give Lumpkin Miranda warnings or tell him that they were recording the interview.

Approximately one month before the grand jury indicted Lumpkin, two FBI agents went to his home to request an interview. (R. 45: Trial Trans., PageID 621).  One of the agents had received approval to covertly record the interaction. (Id., PageID 625-26, 650).  Upon meeting Lumpkin at his home, the agents identified themselves, and then obtained Lumpkin's consent to enter his backyard for an interview. (Id., PageID 624).  Lumpkin ended the interview after less than thirty minutes and the agents left. (Id., PageID 646-47).

The agents did not have to give Lumpkin Miranda warnings because their only objective was to conduct a non-custodial interview at Lumpkin's home.  The fact that Lumpkin terminated

8

the interview by asking the agents to leave shows that he knew the agents were not restraining his freedom in any significant way.  See United States v. Miranda, 384 U.S. 444 (1966).

The covert recording of the interview was proper pursuant to Title 18, United States Code, Section 2511(2)(c), which does not require the Title III procedures set forth in Title 18, United States Code, Section 2518.  United States v. White, 401 U.S. 745, 752-53 (1971); United States v. Caceres, 440 U.S. 741, 750 (1979) ("While Title III . . . regulates electronic surveillance conducted without the consent of either party to a conversation, federal statutes impose no restrictions on recording a conversation with the consent of one of the conversants.").  Lumpkin did not object to the admission of the recording at trial.  (R. 45: Trial Trans., PageID 655).  Additionally, the court instructed the jury regarding Lumpkin's recorded statement.  (R. 46: Trial Trans., PageID 775-76).

Lumpkin's claims regarding Miranda warnings and T-III procedures are procedurally defaulted because he did not raise them in district court or on direct appeal.  He is unable to overcome the cause and actual prejudice standard because, for the reasons stated above, the claims are meritless.

**C.  Kelly's Testimony**

Lumpkin states that, "Mr. Kelly was high on the stand . . . and was incompetent to stand as a witness."  (R. 51-1: Motion, PageID 822).  This claim is not a ground for relief under § 2255.  See Weinberger, 268 F.3d at 351 (setting threshold standard under § 2255).  The jurors who convicted Lumpkin assessed Kelly's credibility and the weight his testimony deserved.  United States v. Bailey, 444 U.S. 394, 414-15 (1980) ("The Anglo-Saxon tradition of criminal justice, embodied in the United States Constitution and in federal statutes, makes jurors the judges of the credibility of testimony offered by witnesses.").  Moreover, the court properly

9

instructed the jury on assessing the credibility of witnesses. (R. 46: Trial Trans., PageID 767-69). To the extent that Lumpkin's claim can be construed as a challenge to the jury's verdict, such a challenge is procedurally defaulted because Lumpkin did not properly preserve the issue at the district court level. Lumpkin, 677 F. App'x. at 995.

On direct examination, Kelly testified that he had smoked marijuana the day before. (R. 45: Trial Trans., PageID 484). Kelly's admission came approximately twenty minutes into his testimony. (Id.). Prior to the admission, Kelly had already competently provided detailed personal history about the past thirteen years of his life. (Id., PageID 458-84). Interestingly, the record also reveals that on cross-examination defense counsel only briefly mentioned that Kelly had smoked marijuana the day before. (Id., PageID 529).

Lumpkin's claim that Kelly was an incompetent witness is not cognizable because the jury assessed Kelly's credibility. Indeed, the record reflects that there were no issues with Kelly's demeanor on the stand. To the extent that Lumpkin's claim can be construed as a challenge to the jury's verdict, such a challenge is procedurally defaulted because Lumpkin did not properly preserve the issue at the district court level and he fails to show cause for failing to do so.

### D. Kelly's and Devine's Criminal Conduct

Lumpkin states that, "the Government failed to prosecute both Mr. Kelly and Ms. Devine for the weapons violations." (R. 51-1: Motion, PageID 822). This claim is not cognizable because prosecutorial decisions based on Kelly's and Devine's conduct did not affect Lumpkin's conviction or 63-month sentence. See 28 U.S.C. § 2255(a).

## IV. CONCLUSION

Lumpkin fails to establish a single ground for relief under 28 U.S.C. § 2255.  The government respectfully urges this Court to deny Lumpkin's § 2255 motion without a hearing.

                Respectfully submitted,

                DAVID A. SIERLEJA
                Acting United States Attorney

By:   /s/ Edward F. Feran
        Edward F. Feran (OH: 0039083)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3709
        (216) 522-8355 (facsimile)
        Edward.Feran@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 10th day of August 2017 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

    /s/ Edward F. Feran
    Edward F. Feran
    Assistant U.S. Attorney